[Civ. No. 13531. First Dist., Div. Two. May 17, 1948.]

FRED GIBSON ARMSTRONG, Appellant, v. MARIE HANSEN ARMSTRONG, Respondent.

[Civ. No. 13532. First Dist., Div. Two. May 17, 1948.]

FRED G. ARMSTRONG, Appellant, v. MARY S. ARMSTRONG, Respondent.

Joseph A. Brown and Harry Gottesfeld for Appellant.

Matthew J. Dooley for Respondents.

DOOLING, J.—Two appeals are here presented: one from a final decree of divorce entered on March 11, 1947, *nunc pro tunc* as of January 25, 1925, in the action entitled *Fred Gibson Armstrong* v. *Marie Hansen Armstrong*; and the other from an order allowing temporary alimony, attorney's fees and costs to defendant in the action entitled *Fred G. Armstrong* v. *Mary S. Armstrong*.

Fred Gibson Armstrong married Marie Hansen on March 16, 1922, and obtained an interlocutory decree of divorce from her on January 24, 1924. Without the entry of a final decree of divorce Armstrong married the respondent on April 27, 1925. He procured the entry of a final decree of divorce from Marie Hansen Armstrong on January 20, 1927. Appellant Armstrong and the respondent Mary S. Armstrong lived together as husband and wife continuously from the date of their marriage in 1925 until 1946 when appellant commenced an action against respondent for an annulment of their marriage on the ground that at the time they were married he was still the legal husband of Marie Hansen Armstrong.

Respondent filed a cross-complaint in which, in separate counts, she asked for a divorce if her marriage to appellant was valid and for her quasi-community rights in the property acquired by appellant and herself during the 21 years that they had lived together as husband and wife if their marriage was void. In the divorce action she moved the court for an order granting her temporary alimony, counsel fees and costs. On the hearing of this motion appellant testified that he entered into the marriage with respondent in 1925 in good faith believing that his divorce from Marie Hansen Armstrong became final automatically at the end of one year after the entry

of the interlocutory decree of divorce, but that at the time the final decree was entered in 1927 his attorney advised him that his second marriage in 1925 was invalid and that he and respondent should have a second ceremonial marriage performed. This, however, was never done. The evidence is in conflict as to whether respondent was ever informed of the invalidity of her marriage, her testimony being that she believed her marriage to appellant to be valid at all times until the commencement of the action for its annulment. Counsel for respondent moved the court for a final decree of divorce *nunc pro tunc* as of January 25, 1925, in the action between appellant and Marie Hansen Armstrong. Upon objection of counsel for appellant that respondent had no standing to make such a motion in an action in which she was not a party the court of its own motion made the order for the entry of the final decree of divorce *nunc pro tunc* and the order expressly so recites. The order for temporary alimony, counsel fees and costs followed.

The *nunc pro tunc* decree appealed from was entered pursuant to Civil Code, section 133 which reads:

"Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed or entered, if no appeal has been taken from the interlocutory judgment or motion for a new trial made, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. The court may cause such final judgment to be signed, dated, filed and entered *nunc pro tunc* as aforesaid, even though a final judgment may have been previously entered where by mistake, negligence or inadvertence the same has not been signed, filed or entered as soon as it could have been entered under the law if applied for. Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."

█ Appellant argues that such a decree cannot be made effective as of a date before the enactment of that code section. The courts have expressly held to the contrary. (*Macedo* v. *Macedo,* 29 Cal.App.2d 387, 390-391 [84 P.2d 552] ; *Ringel* v. *Superior Court,* 54 Cal.App.2d 34 [128 P.2d 558] ; *Estate of Hughes,* 80 Cal.App.2d 550 [182 P.2d 253].) We are asked to overrule these decisions on the ground that they are inconsistent with Civil Code, section 3 which declares that no part of the code is retroactive unless it expressly so declares. Whatever force this argument would otherwise have is nullified by the fact that the Legislature amended and reenacted Civil Code, section 133 in 1941, approximately three years after the court in *Macedo* v. *Macedo, supra,* had expressly held that the section should be given retroactive effect. █ There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts. (*Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428] ; *Union Oil Associates* v. *Johnson,* 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499] ; 23 Cal.Jur. 795.)

The section expressly gives the court the power to enter the final decree *nunc pro tunc* "upon its own motion." The court, having heard the evidence concerning the failure to have the final decree entered before the second marriage, was amply justified in exercising this power given it by the Legislature, presumably for the express purpose of meeting just such a situation.

█ It is further argued that the final decree having actually been entered in 1927, the rights of the parties became thereby finally adjudicated and that a *nunc pro tunc* decree could not thereafter be entered. Civil Code, section 133 was amended in 1941 to permit this very thing to be done and a similar *nunc pro tunc* decree was upheld in *Estate of Hughes, supra,* 80 Cal.App.2d 550. In that case the final decree was entered in 1944, and a later *nunc pro tunc* decree was entered in 1946, as of 1927. The argument that the decision of this point in *Estate of Hughes* is dictum because the court gave an alternative ground for its decision is not sound. █ "Where two independent reasons are given for a decision, neither one is to be considered mere dictum, since there is no more reason for calling one ground the real basis of the decision than the other." (7 Cal.Jur. 641; *Gilgert* v. *Stockton Port District,* 7 Cal.2d 384, 389 [60 P.2d 847].)

486

■ The final argument that the *nunc pro tunc* decree by validating respondent's marriage to appellant deprives him of vested rights by giving her a community property interest in the property acquired by the community is overcome by respondent's testimony that she at all times believed the marriage to be a valid one. We must presume in favor of the court's action that the trial judge found this testimony to be true. If so she already had a quasi-community property right equal in extent to that of a legal wife. (*Vallera* v. *Vallera,* 21 Cal.2d 681 and cases cited at pp. 683-684 [134 P.2d 761].)

The only attack on the order for temporary alimony, counsel fees and costs is that they cannot be allowed to one not a legal wife. This fails with the affirmance of the *nunc pro tunc* decree.

The *nunc pro tunc* decree of divorce in appeal number 13531 and the order for temporary alimony in number 13532 are, and each of them is, affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied June 16, 1948, and appellant's petition for a hearing by the Supreme Court was denied July 15, 1948.

[Civ. No. 13761.   First Dist., Div. Two.   May 17, 1948.]

