[L.A. No. 31942. Mar. 18, 1985.]

JOAN KATHRYN WILKOFF, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Ronald Y. Butler, Public Defender, Frank Scanlon, Assistant Public Defender, James Dean Allen, Vicki Briles and Leonard Gumlia, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Randell L. Wilkinson, Deputy District Attorneys, for Real Party in Interest.

Darryl W. Genie as Amicus Curiae.

OPINION

**BROUSSARD, J.**—The issue in this case is whether one instance of driving under the influence which causes injury to several persons is chargeable as one count of driving under the influence or as several.

The pertinent statute is Vehicle Code section 23153,[1] which at the time of the accident in question provided, in relevant part:

"(a) It is unlawful for any person, while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug, to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes death or bodily injury to any person other than the driver.

"(b) It is unlawful for any person while having 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle and, when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of the vehicle, which act or neglect proximately causes death or bodily injury to any person other than the driver."[2]

Defendant petitions this court for relief from denial of her motion to set aside counts IV through XIII of the information, pursuant to Penal Code section 995.

The information alleges that at approximately 12:45 a.m. on August 13, 1983, defendant executed an improper lane change on the Pacific Coast

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

[2] The term "felony drunk driving" is used herein to refer both to the traditional offense of driving under the influence (§ 23153, subd. (a)) and the recently devised offense of driving at a blood alcohol level of 0.10 or higher (§ 23153, subd. (b)).

Drunk driving that does not result in bodily injury to another person is chargeable as a misdemeanor under section 23152.

Highway in Huntington Beach, California, which resulted in a four-vehicle collision causing the death of one individual and injuring five others. It is further alleged that the blood alcohol level in the sample extracted from defendant was 0.19 percent.

Defendant was charged with one count of vehicular manslaughter for the one death she caused. (Pen. Code, § 192.) She was also charged with a count of driving under the influence of alcohol (§ 23153, subd. (a)) and a count of driving with a blood alcohol level of 0.10 or above (§ 23153, subd. (b)) *for each of the six persons injured or killed.* Thus, defendant was charged with 13 counts in all.

Defendant brought a motion to dismiss ten of the drunk driving counts, arguing that only one count of section 23153, subdivision (a) and one count of subdivision (b) can arise from a single incident of driving under the influence. The trial court denied the motion to strike the repetitive counts and defendant petitions for a writ of prohibition or mandamus.

## DISCUSSION

The law on the question of multiple counts of felony drunk driving has been settled in the Courts of Appeal for over 13 years, since the decision in *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75 [95 Cal.Rptr. 547]. The court in *Lobaugh* held that "a person who has violated section 23101 whether one, or several, persons be injured thereby, has committed but one offense." (*Id.,* at p. 79.)[3] Other Courts of Appeal have uniformly followed *Lobaugh* (*People* v. *Moore* (1971) 20 Cal.App.3d 444 [97 Cal.Rptr. 601]) or discussed it as settled law. (See *People* v. *Eagles* (1982) 133 Cal.App.3d 330, 343 [183 Cal.Rptr. 784]; *In re Frank F.* (1979) 90 Cal.App.3d 383, 386 [153 Cal.Rptr. 375]; *People* v. *Rocha* (1978) 80 Cal.App.3d 972, 976 [146 Cal.Rptr. 81]; *People* v. *Lockheed Shipbuilding & Constr. Co.* (1977) 69 Cal.App.3d Supp. 1, 13-14 [138 Cal.Rptr. 445].)

The district attorney asks us to reverse this line of authority and return to the contrary rule stated in *People* v. *Young* (1964) 224 Cal.App.2d 420, 424 [36 Cal.Rptr. 672]. However, the issue before us was addressed in only a single sentence in *Young* (discussed below), and that sentence has not been

---

[3]*Lobaugh* was decided under former section 23101, the predecessor statute to section 23153. The substance of the statute has not been changed for our purposes. Former section 23101 provided, in pertinent part: "It is unlawful for any person, while under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, to drive a vehicle upon a highway, and when so driving, do any act forbidden by law or neglect any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes death or bodily injury to any person other than himself."

explained or cited—except to question it—in the more than 20 years since its publication. The district attorney must therefore make his argument anew.

██ Presented with this issue for the first time, we now approve the view expressed in *People* v. *Lobaugh* that one instance of drunk driving is chargeable as only one count of felony drunk driving (i.e., one count of § 23153, subd. (a) and one count of subd. (b)) even if more than one person is injured thereby.[4]

Our analysis begins with the recognition that a charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once. The act prohibited by section 23153 is the act of driving a vehicle while intoxicated and, when so driving, violating any law relating to the driving of a vehicle. In *Lobaugh* the court found that this act was committed only once, since there was only one driving incident, despite the fact that injuries to several persons were proximately caused thereby. The emphasis in *Lobaugh* was on the act constituting the gravamen of the offense since, as we have said, the number of times the act is committed determines the number of times the statute is violated: "The unlawful act denounced by the Vehicle Code is the 'mere act of driving a vehicle upon a public highway while intoxicated'; the act is either a misdemeanor or a felony, depending on whether personal injuries result therefrom. The felony section simply 'graduate[s] the punishment according to the [more serious] consequences of the forbidden act.'" (*People* v. *Lobaugh, supra,* 18 Cal.App.3d at pp. 79-80, citations omitted, brackets in original.) The concurring opinion of Justice Sims further pointed out that "[t]he question of '*bodily injury*' is only of materiality in that it aggravates the offense [from a misdemeanor to a felony]. The fact that there are several victims cannot transform the single act into multiple offenses." (*Id.,* at p. 84, italics in original.)

By way of contrast, we apply the same analysis to the crime of vehicular manslaughter. The actus reus of vehicular manslaughter is homicide—the unlawful killing of a human being.[5] ██ When a defendant commits sev-

---

[4] By "one instance" of drunk driving we refer to one volitional act of driving. Thus if a driver collides with one car and is involuntarily propelled into a second car, only "one instance" of driving has occurred. But if a driver collides with the first car and then *voluntarily* drives further and collides with a second car, then two acts of driving have occurred and the driver may be charged with two counts of felony drunk driving.

[5] At the time of Ms. Wilkoff's accident, Penal Code section 192 provided, in relevant part: "Manslaughter is *the unlawful killing of a human being,* without malice. . . . [¶] 3. In the driving of a vehicle—(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence. (b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence. . . ." (Italics added.)

eral homicides in the course of a single driving incident, he or she has committed the act prohibited by the statute several times. Thus, the Courts of Appeal have consistently upheld multiple counts of vehicular manslaughter, while prohibiting multiple counts of felony drunk driving. "[I]t is settled that under the manslaughter statutes, each victim represents a separate violation (*People* v. *De Casaus* (1957) 150 Cal.App.2d 274, 280 [309 P.2d 835]), but that in a prosecution under section 23101 of the Vehicle Code, the number of violations does not increase with each additional victim. (*People* v. *Moore* (1971) 20 Cal.App.3d 444, 450-451 [97 Cal.Rptr. 601]; *People* v. *Lobaugh* (1971) 18 Cal.App.3d 75, 79-80 [95 Cal.Rptr. 547].)" (*In re Frank F.*, *supra,* 90 Cal.App.3d at p. 386. Accord, *People* v. *Eagles,* *supra,* 133 Cal.App.3d at p. 343; *People* v. *Lockheed Shipbuilding & Constr. Co.*, *supra,* 69 Cal.App.3d Supp. 1, 13-14.)[6]

The district attorney takes issue with a statement in *People* v. *Lobaugh*—removed from its context—that "[u]nlike the usual 'multiple victim' case, here the fundamental concern of the state is not the outrage done the victims, but rather the prevention of 'drunken driving' and the punishment of those who so conduct themselves." (*People* v. *Lobaugh, supra,* 18 Cal.App.3d at p. 79.) The district attorney concludes from this sentence that the court in *Lobaugh* mistakenly believed that injuries caused by drunk drivers were only a secondary concern of the Legislature. However, the passage immediately following the quoted sentence[7] shows that the court was merely expressing the analytical notion that the act prohibited by the statute was the act of driving, not the act of injuring persons. It is preposterous to suggest—and the court in *Lobaugh* did not do so—that the Legislature somehow prohibited drunk driving for its own sake, and not because of the untold injuries it causes to citizens of the state. Injury to another person is, in fact, the basis upon which the offense of drunk driving is enhanced to a felony.

The district attorney next points to the familiar rule from *Neal* v. *State of California* (1960) 55 Cal.2d 11, 20 [9 Cal.Rptr. 607, 357 P.2d 839], that

---

[6]While the moral culpability of a drunk driver who causes death and a drunk driver under the same circumstances who merely causes injury may be the same, the Legislature has chosen to draw a line at this point by defining one crime in terms of an act of violence against the person ("unlawful killing") and placing it in the Penal Code, while defining the other in terms of an act of driving and placing it in the Vehicle Code. The Legislature has made this line even more clear through recent amendments to the drunk driving and manslaughter statutes. Effective January 1, 1984, an intoxicated driver who kills another person is no longer chargeable with that death under the Vehicle Code, but may only be charged under the manslaughter statutes of the Penal Code. (See Stats. 1983, ch. 937, § 1, p. —, amending § 23153 and Pen. Code, § 192.)

[7]That passage reads: "It was said in *People* v. *Chatham*, '. . . it is not the receiving of the injury that concerns the state, but the *causing* of such injuries which the state seeks to minimize.' The unlawful act denounced by the Vehicle Code is the 'mere act of driving a vehicle upon a public highway while intoxicated.'" (*People* v. *Lobaugh, supra,* 18 Cal.App.3d at pp. 79-80, citation omitted, italics in original.)

where a single act of violence against the person results in multiple victims, multiple punishments are permitted. This rule is an exception to Penal Code section 654, which generally prohibits multiple punishment for a single criminal act.[8] In *Neal* we explained that "[t]he purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability. A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person. This distinction between an act of violence against the person that violates more than one statute and such an act that harms more than one person is well settled." (*Id.*, at p. 20.)

In a recent case interpreting the *Neal* rule, *People* v. *Ramos* (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908], reversed on other grounds, *California* v. *Ramos* (1983) 463 U.S. 992 [77 L.Ed.2d 1171, 103 S.Ct. 3446] (*Ramos I*), we held that the taking of a single item of property from the possession or presence of two persons was chargeable as two counts of robbery. (*Id.*, at pp. 587-589.) As in the case before us today, we inquired whether the "central element" of the offense—the act prohibited by the statute—had been committed more than once, and found that it had: "Robbery is not merely the felonious taking of personal property. Such a taking, without more, is only theft. . . . [¶] We view the central element of the crime of robbery as the force or fear applied to the individual victim in order to deprive him of his property. Accordingly, if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper." (*Id.*, at p. 589; fn. omitted.)

In citing the *Neal* rule, the district attorney overlooks the threshold inquiry that concerned us in *Ramos I* and that is the focus of our discussion in the case at bar. ■ A defendant may properly be convicted of multiple counts for multiple victims of a single criminal act only where the act prohibited by the statute is centrally an "act of violence against the person." (*Neal, supra,* 55 Cal.2d at p. 20.) In *Neal,* for instance, the defendant was properly charged with two counts of attempted murder where he set fire to a couple's home in an attempt to murder them.[9] In *People* v. *Gaither* (1959)

---

[8]Penal Code section 654, in pertinent part, provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

[9]Penal Code section 654, however, precluded punishment for arson as well as attempted murder, since both offenses were part of a single course of conduct having one objective. (*Neal* v. *State of California, supra,* 55 Cal.2d at p. 20.)

173 Cal.App.2d 662, 668 [343 P.2d 799], the defendant was charged with four counts of administering poison with the intent to kill where he mailed one package of poisoned candy to his ex-wife, and four members of her family ate it and became violently ill. In *In re Sheridan* (1964) 230 Cal.App.2d 365, 372-374 [40 Cal.Rptr. 894], four convictions of annoying or molesting children under the age of eighteen were upheld where petitioners induced four girls to enter petitioners' automobile for a ride. In *People v. Prater* (1977) 71 Cal.App.3d 695, 699 [139 Cal.Rptr. 566], two counts of assault with a deadly weapon were upheld where defendant shot his intended victim in the abdomen and the bullet passed through the victim's body and hit a second person. Multiple counts for multiple victims of manslaughter have also been upheld, as noted above. (See *In re Frank F.*, *supra*, 90 Cal.App.3d at p. 386; *People v. Eagles, supra*, 133 Cal.App.3d at pp. 342-343. See also *People v. Lockheed Shipbuilding & Constr. Co.*, *supra*, 69 Cal.App.3d Supp. at pp. 12-13.)

In contrast to the crimes of murder, manslaughter, administering poison, robbery and sex offenses—all of which are defined in terms of an act of violence against the person—the act prohibited by section 23153 is defined in terms of an act of driving: the driving of a vehicle while intoxicated and, when so driving, violating any law relating to the driving of a vehicle. The actus reus of the offense does not include causing bodily injury. Rather, where bodily injury *proximately results* from the prohibited act, the offense is elevated from a misdemeanor to a felony.

Defendants are not chargeable with a greater *number* of offenses simply because the injuries proximately caused by their single offense are greater. Rather, the Legislature may provide for increased *punishment* for an offense that has more serious consequences by, for instance, raising the statutory prison terms, adding enhancements, or upgrading the offense from a misdemeanor to a felony. The number and severity of injuries proximately caused by an offense may also be considered by a trial court in sentencing.

The district attorney relies on *People v. Young, supra*, 224 Cal.App.2d 420, where the court disposed of a challenge to multiple counts of drunk driving by simply restating the rule of *Neal.*[10] The court in *Young* did not address the arguments raised by petitioner here and did not engage in the threshold inquiry, discussed above, that is required before application of

---

[10]The court in *Young* stated: "Appellant first contends he may not be punished for the injuries caused to both his victims, since injury to both resulted from the same act. *Here appellant is in error, for Penal Code section 654 upon which he relies does not prohibit multiple punishment which concerns multiple victims. (Neal v. State of California*, 55 Cal.2d 11, 20, 21 [9 Cal.Rptr. 607, 357 P.2d 839].)" (*People v. Young, supra*, 224 Cal.App.2d at p. 424, italics added.)

the *Neal* rule. We therefore decline to rely on the decision in *People* v. *Young*.[11]

The district attorney's argument is, finally, fatally undercut by the fact that although *Lobaugh* has been followed by the Courts of Appeal since 1971, the Legislature has not reacted to it despite repeated scrutiny of section 23153. Section 23153 (or its predecessor, former § 23101) was amended in 1972, 1976, 1977, 1978, 1980, 1981, 1982 and 1983, with a major rewriting and renumbering in 1981. ■ "Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it." (*People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393]; *People* v. *Fox* (1977) 73 Cal.App.3d 178, 181 [140 Cal.Rptr. 615].) "There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts." (*Armstrong* v. *Armstrong* (1948) 85 Cal.App.2d 482, 485 [193 P.2d 495].)[12]

■ Having set forth our reasoning and rejected the arguments of the district attorney, we now approve the rule first set forth in *People* v. *Lobaugh, supra,* that one instance of driving under the influence which causes injury to several persons is chargeable as only one count of driving under the influence. Let a peremptory writ of mandate issue commanding respon-

---

[11]The district attorney also draws our attention to Government Code section 13960, subdivision (c)(2), concerning crime victim indemnification, to show that a violation of section 23153 is there considered a "crime of violence" subject to the indemnification statutes. Therefore, the district attorney argues, driving under the influence should also be grouped with those "crimes of violence" that are subject to the *Neal* rule. (See *People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].)

No reasoning has been offered to support an analogy from the context of the crimes for which indemnification may be sought from the State Board of Control, to the context of charging practices in multiple victim offenses. The reasons for each rule are distinct and we cannot sensibly analogize from one context to the other.

Furthermore, the Government Code section cited by the district attorney was amended effective February 18, 1982 (prior to Ms. Wilkoff's accident) to delete "of violence" from the list of "crimes" that includes section 23153.

[12]The district attorney finally raises a procedural objection to defendant's petition. The district attorney objects to the use of a Penal Code section 995 motion to challenge repetitive counts at the pretrial stage. He would have defendant await conviction on all 13 counts and move to strike the excess convictions at the time of judgment, as occurred in *Lobaugh* and *Moore.* The reason for this objection is that if repetitive charges as to each victim are struck from the information, the district attorney will not know which counts to strike and which counts to retain.

The problem may be easily solved, however, by naming all the victims in a single count of felony drunk driving (i.e., one count of violating § 23153, subd. (a) and one count of violating § 23153, subd. (b)) and using the injuries to any or all victims in order to prove that charge. This will give the district attorney ample opportunity to prove his case by showing bodily injury to at least one victim.

dent superior court to vacate its order in the instant case and to set aside counts IV through XIII of the information.

Bird, C. J., Mosk, J., Kaus, J., Reynoso, J., Grodin, J., and Lucas, J., concurred.