Filed 1/31/14  P. v. Pacheco CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIO ALFREDO PACHECO,<br><br>    Defendant and Appellant. | A134607<br>A136180<br><br>(Alameda County<br>Super. Ct. No. 165739) |

Appellant Mario Alfredo Pacheco was convicted after a jury trial of multiple counts relating to his practice of dentistry without a license.  He argues (1) his convictions and sentence violate double jeopardy; (2) his sentence violates Penal Code section 654; (3) the trial court failed to sua sponte deliver a unanimity instruction; and (4) an order of restitution was improper.  We affirm.

## BACKGROUND

Appellant was charged with the uncertified practice of medicine (Bus. & Prof. Code, § 2052; count 1); the practice of dentistry without a license (*id*., § 1701, subd. (f); count 2); unlicensed dentistry creating a risk of harm (*id*., § 1701.1; count 3), with an allegation of great bodily injury upon Teresa Flores (Pen. Code, § 12022.7, subd. (a)); unlicensed dentistry creating a risk of harm (Bus. & Prof. Code, § 1701.1; count 5), with

1

an allegation of great bodily injury upon Reina Aguilera (Pen. Code, § 12022.7, subd. (a)); and additional counts of which he was acquitted after trial.[1]

At trial, Flores and Aguilera testified appellant performed extensive dental work on them over a period of years.[2] On Flores, appellant performed a root canal, replaced existing crowns, extracted teeth, filed down teeth and installed crowns, and installed a bridge.[3] Flores paid appellant more than $10,000. Flores continued to experience problems with her teeth: the crowns and bridges placed by appellant fell out, and her gums were painful and became infected. On Aguilera, appellant performed root canals, extracted a tooth, filed down teeth, installed crowns, and installed a bridge. Aguilera paid appellant $1,500. Aguilera also had problems with appellant's work.

Mark David Stevenson, a licensed dentist, testified as an expert in general dentistry and dental practice. He testified to become a licensed dentist in California a person must graduate from an accredited dental school and complete written and clinical examinations. Dr. Stevenson also testified to various risks involved if dental work is performed improperly.

Appellant was the sole witness testifying in his defense. He testified to extensive experience as a dental technician — a person who makes dentures, crowns, bridges, and other similar devices. He worked as a dental technician in a dental laboratory in El Salvador and for the School of Dentistry at the University of El Salvador. He then spent two years at a dental technician program in the United States, worked as a dental technician at a dental laboratory in San Francisco, and opened a dental laboratory of his own. After opening his own laboratory, he began performing free or low-cost dental work for people who could not afford to have the work done by a licensed dentist.

---

[1]  We omit the background facts relating to the counts of which appellant was acquitted as they are not relevant to this appeal.

[2]  Both Flores and Aguilera testified through an interpreter.

[3]  Expert testimony at trial established a crown is a complete cover over a tooth and requires the tooth first be reduced from all sides, and a bridge, which replaces an extracted tooth, consists of a replacement tooth anchored by crowns covering each of the adjacent teeth.

Appellant had no formal training in dentistry, but had observed dentists extracting teeth and installing crowns and bridges, had sat in on some dentistry classes at the University of El Salvador, and read journals and books on dentistry. He did not perform procedures with which he was not familiar or comfortable.

Appellant testified that he practiced dentistry on Flores, including removing decayed portions of her teeth, performing a root canal, and installing crowns and bridges. He also treated Aguilera, including replacing a bridge, extracting a tooth, and beginning to perform a root canal.

The jury convicted appellant of count 1, unlicensed practice of medicine; count 2, unlicensed practice of dentistry; and counts 3 and 5, unlicensed dentistry creating a risk of harm in violation of Business and Professions Code section 1701.1 (section 1701.1).[4] With respect to counts 3 and 5, the jury found not true the allegations of great bodily harm upon Flores and Aguilera, respectively.

The trial court sentenced appellant to county jail for a one-year term on count 1 and a six-month term on count 2, but stayed both sentences pursuant to Penal Code section 654. The trial court sentenced appellant to state prison for consecutive terms of three years on count 3 and eight months on count 5. After a restitution hearing, the trial court ordered restitution of $21,606 to Flores and $8,156 to Aguilera for past and future dental costs.

DISCUSSION

I. *Double Jeopardy*

Appellant contends his four convictions all relate to his unlicensed practice of dentistry and are prohibited by the double jeopardy clauses of the federal and the state

---

[4] Section 1701.1, subdivision (a) provides, in relevant part: "[A] person who willfully, under circumstances or conditions that cause or create risk of bodily harm, serious physical or mental illness, or death, practices or attempts to practice, or advertises or holds himself or herself out as practicing dentistry without having at the time of so doing a valid, unrevoked, and unsuspended certificate, license, registration, or permit as provided in this chapter, or without being authorized to perform that act pursuant to a certificate, license, registration, or permit obtained in accordance with some other provision of law, is guilty of a public offense . . . ."

3

Constitutions. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) He further contends double jeopardy precludes the imposition of sentences for both counts of violation of section 1701.1. We disagree with both contentions.

Double jeopardy does not preclude multiple convictions in a single criminal proceeding. "As regards federal double jeopardy principles, '[t]he Double Jeopardy Clause "protects against a *second prosecution* for the same offense after acquittal. It protects against a *second prosecution* for the same offense after conviction. . . ." [Citation.]' [Citation.] [These protections] are clearly not implicated here because we are directly concerned only with multiple convictions in a unitary trial, not multiple punishments in successive unrelated criminal proceedings." (*People v. Sloan* (2007) 42 Cal.4th 110, 120-121 (*Sloan*); accord, *People v. Anderson* (2009) 47 Cal.4th 92, 103-104.)[5]

Appellant cites cases for the proposition that a single actus reus cannot be the basis for more than one conviction based on the same statute in a single proceeding, arguing one of his two section 1701.1 convictions is thereby barred. These cases do not appear to be based on double jeopardy principles, and in any event are distinguishable. One involves a single incident, rather than the years-long course of conduct at issue here. (See *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 348 [conduct was "a single incident of driving under the influence"].) In others, the court concluded the relevant statute contemplated *only* a specific continuous course of conduct, and thus such a course of conduct constituted a single violation. For example, *People v. Lewis* (1978) 77 Cal.App.3d 455 (*Lewis*) involved a statute penalizing " '[a]ny person who, knowing another person is a prostitute, lives or derives support or maintenance in whole or in part from the earnings or proceeds of such person's prostitution . . . .' " (*Id.* at p. 460.) The defendant was charged with multiple counts of violating the statute, which all "involved

---

[5] Appellant argues the federal double jeopardy clause is not limited to successive proceedings, but we are bound by the California Supreme Court's interpretation of United States Supreme Court cases. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

the same prostitute; they differ only as to date." (*Ibid.*) The court held only one count could be charged because "[r]easonable interpretation of the statutory definition leads to but one conclusion — that the legislative intent was that living or deriving support or maintenance from the earnings of a prostitute or proceeds of her prostitution knowing her to be a prostitute is an ongoing continuing offense that occurs over a period of time."[6] (*Id.* at p. 462; see also *People v. Garcia* (2003) 107 Cal.App.4th 1159, 1162, fn. 1, 1163 [crime of " 'flee[ing] or attempt[ing] to elude a pursing peace officer' " violated only once by "an uninterrupted single course of conduct, i.e., one continuous act of driving lasting 30 minutes" because the statute "contemplates a continuous course of driving, which may transpire over a short or long period of time"].)

As we discuss below, section 1701.1 can be violated either by a single act or by a course of conduct of practicing unlicensed dentistry over time which causes a risk of harm to a particular individual. (See parts II & III.B., *post*.) Accordingly, counts 3 and 5 charged distinct crimes — courses of conduct involving Flores and Aguilera, respectively — which do not constitute a single actus reus.

Appellant notes the double jeopardy clause also protects against multiple punishments, but "the Supreme Court has made clear that '[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense . . . [citations] . . . *and then only when such occurs in successive proceedings*. [Citation.]' [Citation.]" (*Sloan, supra,* 42 Cal.4th at p. 121.) When punishment is imposed in a single proceeding, "[f]ederal law, like California statutory law, clearly recognizes that cumulative punishment may be imposed under two statutes, even where they proscribe the same conduct, if the Legislature has specifically authorized cumulative punishment. [Citation.]"[7] (*Ibid.*) Penal Code section 654 sets forth the Legislature's

---

[6]   The reasoning of *Lewis* does not preclude the possibility of multiple counts involving *different* prostitutes.

[7]   The cases cited by appellant in which the legislature did not authorize cumulative punishment are inapposite. (E.g., *Rutledge v. United States* (1996) 517 U.S. 292, 307;

determination of when multiple punishments in the same criminal proceeding are authorized. We discuss its application to this case below.

II. *Penal Code Section 654*

Appellant argues the imposition of consecutive sentences on both counts of section 1701.1 violated Penal Code section 654.

Penal Code section 654 precludes multiple punishments for a single "act or omission."[8] " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of [Penal Code] section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*Correa*, 54 Cal.4th at p. 336.) "The 'intent and objective' test is a rigorous one, however, since 'a "broad and amorphous" view of the single "intent" or "objective" needed to trigger the statute would impermissibly "reward the defendant who has the greater criminal ambition with a lesser punishment." ' [Citation.]" (*People v. Morelos* (2008) 168 Cal.App.4th 758, 769.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence. [Citation.]" (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Appellant argues the two section 1701.1 counts used identical language, including the same time period of January 1, 2006 through December 31, 2009. However, the verdict form for each count included the allegation of great bodily injury identifying a different victim: Flores and Aguilera, respectively. This indicated to the jury that count 3 involved the unlicensed practice of dentistry creating a risk of harm to Flores, and count 5

---

*Ball v. United States* (1985) 470 U.S. 856, 861-864; *Ex parte Lange* (1873) 85 U.S. 163, 164.) As we discuss in part II., below, the punishment imposed here was so authorized.

[8] In 2012, the California Supreme Court held Penal Code section 654 does not bar multiple punishments for multiple convictions of the same code section. (*People v. Correa* (2012) 54 Cal.4th 331, 344 (*Correa*).) However, it applied this new rule prospectively only. (*Ibid.*) As appellant's crimes were committed between 2006 and 2009, this new rule does not apply to him.

involved the unlicensed practice of dentistry creating a risk of harm to Aguilera. The prosecutor's closing argument confirmed this understanding of the separate basis for each count: as to "Flores, the evidence has shown that [when appellant] committed [c]ount 3, he committed unlicensed practice of dentistry creating risk of harm"; "[c]ount 5 involved . . . Aguilera." The distinction between counts 3 and 5 was based on the victim involved.

Appellant argues the years-long period of practicing unlicensed dentistry creating a risk of harm is a single act or indivisible course of conduct. There were indisputably multiple discrete acts of such practice over this period of time. Moreover, a course of conduct violating section 1701.1 can be divisible. In *People v. Brown* (1991) 234 Cal.App.3d 918 (*Brown*), the Court of Appeal considered an analogous statute prohibiting the unlicensed practice of medicine creating a risk of harm (Bus. & Prof. Code, former § 2053);[9] Brown conducted such unlicensed practice on four separate dates over a period of months, each involving the same individual, and was convicted on four separate counts. (*Id.* at pp. 924-925, 933.) The Court of Appeal rejected Brown's argument that his actions constituted an indivisible course of conduct precluding imposition of punishment on each count: "Based on the clear evidence of Brown's practicing medicine without a license on separate occasions and receiving separate payments in connection with each occasion, the evidence supports the trial court's

---

[9]   Business and Professions Code former section 2053 provided, in relevant part: "Any person who willfully, under circumstances or conditions which cause or create risk of great bodily harm, serious physical or mental illness, or death, practices or attempts to practice, or advertises or holds himself or herself out as practicing, any system or mode of treating the sick or afflicted in this state, or diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury or other physical or mental condition of any person, without having at the time of so doing a valid, unrevoked and unsuspended certificate as provided in this chapter, or without being authorized to perform that act pursuant to a certificate obtained in accordance with some other provision of law, is punishable by imprisonment in the county jail for not exceeding one year or in the state prison." (As amended by Stats. 1987, ch. 1336, § 2, p. 4808, repealed by Stats. 2002, ch. 1085, § 15, p. 7023; *Brown, supra,* 234 Cal.App.3d at pp. 927-928.)

7

implied finding a different intent and objective attended each of the four counts of violating Business and Professions Code [former] section 2053." (*Id.* at p. 933.)

Appellant's counts were not divided by date, as was the case in *Brown*, but instead by the individuals upon whom he practiced unlicensed dentistry. Such a division is also contemplated by section 1701.1. (See *People v. Eckley* (1973) 33 Cal.App.3d 91, 97 [in practicing medicine without a license with numerous patients, the practice in connection with each patient would be a separate violation divisible in time from the others].)

The trial court found appellant had a different objective in practicing unlicensed dentistry on Flores and on Aguilera. Substantial evidence supports this finding. The imposition of consecutive sentences for each section 1701.1 count was not precluded by Penal Code section 654.

III. *Unanimity Instruction*

Appellant argues the trial court erred in failing to instruct the jury, sua sponte, it was required to unanimously agree on the act or acts supporting a conviction on all counts for which appellant was convicted.

"[I]f one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' [Citation.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114 (*Napoles*).)

A. *Counts 1 and 2*

Count 1 alleged the uncertified practice of medicine with respect to Monica Santiago, an investigator for the Dental Board of California. Santiago testified at trial that, in an undercover operation, she complained to appellant about a painful molar; appellant examined and diagnosed her tooth. Santiago only visited appellant on one date. Although count 2 did not specifically identify Santiago, the prosecutor explained in his opening statement, "the first two crimes dealt with Monica Santiago"; Santiago saw appellant "on June 24th, [2009, and] he wrongly prescribed a medical treatment . . . .

8

Those are the first two counts of the case." As the prosecution relied on only a single act to prove these charges, no unanimity instruction was required.

In any event, appellant's counsel admitted his guilt on these two counts in both opening and closing statements; any error was thus harmless. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836; see also *Napoles, supra,* 104 Cal.App.4th at p. 119, fn. 8 ["[t]here is a split of authority on the proper standard for determining whether the erroneous failure to give a unanimity instruction is reversible"].)

B. *Counts 3 and 5*

Even where multiple acts are relied upon with respect to a single count, "no unanimity instruction is required where the acts proved constitute a continuous course of conduct. [Citation.]" (*Napoles, supra,* 104 Cal.App.4th at p. 115.) This exception may arise when " 'the statute contemplates a continuous course of conduct of a series of acts over a period of time,' " as demonstrated by statutory language which " 'focuses on the goal or effect of the prohibited crime.' " (*Ibid.*) Section 1701.1 penalizes "a person who willfully, under circumstances or conditions that cause or create risk of bodily harm, serious physical or mental illness, or death, practices or attempts to practice" dentistry without a license. The statute's focus is on the *effect of the prohibited crime* — the risk of harm to an individual caused by such unlicensed dentistry. Thus, this statute may be violated by a continuous course of conduct involving several incidents of unlicensed dentistry creating a risk of harm.

Contrary to appellant's argument, this conclusion does not preclude the possibility that the statute may *also* be violated by a single incident or by a course of conduct involving a single individual. In *Napoles*, which held no unanimity instruction was required for a child abuse charge, the court noted, "child abuse is not invariably charged as a course of conduct offense; one act or omission constituting abuse may be sufficient for conviction." (*Napoles, supra,* 104 Cal.App.4th at p. 116.) Similarly, in *People v. Sanchez* (2001) 94 Cal.App.4th 622, 634, the court found, "while animal cruelty may be committed by a continuous course of conduct, it may also be committed by a single act of

9

abuse such as by kicking or beating an animal." The inquiry turns on how the violation is charged and presented to the jury. Where the count alleges conduct occuring over a range of dates, that "language alerts the jury that the charge consists of a continuous course of conduct, to be proved by evidence of more than one individual act." (*Napoles*, at p. 117.) If the evidence conforms with this understanding, establishing conduct "on an ongoing basis during the charged period of time" causing the effect targeted by the statutory language, the offense charged is a continuing one and no unanimity instruction is required. (*Sanchez*, at p. 634.) In contrast, where the charge alleges "a particular act on a particular day" (*Napoles*, at p. 116) or the evidence establishes two or more "discrete criminal events . . . , each sufficient to support a conviction" (*Sanchez*, at p. 634), a unanimity instruction is required.

The information here charged conduct occurring between January 1, 2006 and December 31, 2009, with respect to both Flores (count 3) and Aguilera (count 5). It was undisputed that appellant practiced unlicensed dentistry on both of these women over a period of years. In his closing statement, the prosecutor did not argue that any individual incident of unlicensed dentistry was sufficient for a conviction, but instead, in conformance with the charging document and the evidence, argued the violation was proven by the continuous course of conduct. As counts three and five involved continuous courses of conduct with respect to Flores and Aguilera, respectively, no unanimity instruction was required.

IV. *Restitution*

Appellant challenges the order awarding restitution to Flores and Aguilera. He does not contest the amounts claimed, but rather argues his unlicensed practice of dentistry could not have caused the losses.

Restitution is authorized "in every case in which a victim has suffered economic loss as a result of the defendant's conduct." (Pen. Code, § 1202.4, subd. (f).) Tort principles of causation apply, requiring the conduct be a " ' "more than negligible or theoretical" ' " cause of the harm. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310,

10

1321.)  "[W]e review the trial court's restitution order for abuse of discretion."  (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)

Appellant in essence contends the crimes of which he was convicted can cause no harm.  We disagree.  Unlicensed dentistry is prohibited because of the risk the dental work will be performed improperly.  The trial court found appellant's unlicensed dentistry *was* performed improperly, and the improperly performed dental work required Flores and Aguilera to seek additional dental work, thereby incurring economic loss.  The finding was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.